In November of 1975, the plaintiff was elected to a four-year term as a member of the board of finance of the town of Trumbull. To be elected the plaintiff had to be, and was, an elector of the town.
On February 11, 1976, the plaintiff was indicted in the United States District Court for the district of Connecticut for the felony offense of possession of an unregistered firearm. 26 U.S.C. § 5861 (d),5871. On July 13, 1976, the plaintiff pleaded guilty to that charge and, on October 4, 1976, he was sentenced to pay a fine of $2500. He paid his fine the same day and recorded his receipt for payment with the Trumbull town clerk. The conviction of the plaintiff, his being fined and the payment of the fine were matters of general public knowledge in Trumbull and were known to the defendants, the registrars of voters, although no official notice of the plaintiff's conviction came to their attention until they received a notification from the office of the secretary of the state of the state of Connecticut shortly after January 21, 1977.
The defendants Burns and Clough, as registrars of voters, will remove the name of the plaintiff from *Page 96 
the list of electors of the town of Trumbull unless they are prevented from doing so by court order. If the plaintiff's name is removed, the defendant Butler, first selectman of the town, will declare the plaintiff's position on the board of finance vacant. The first selectman has stated his intention to replace the plaintiff with some other elector upon a vacancy occurring.
When this action seeking injunctive relief was commenced, an ex parte injunction was issued restraining the defendants from removing the plaintiff's name from the voting list and from any action to remove or replace the plaintiff as a member of the board of finance. The parties were thereafter heard at trial on the question of a permanent injunction.
The issue to be decided is whether § 9-46 of the General Statutes authorizes the registrars to remove the plaintiff's name from the list of electors. The parties are in agreement that § 9-45 applies only to felony convictions in a state court.
Section 9-46 states: "A person shall forfeit his ... privileges as an elector upon conviction of a felony ...." The statute implements amendmentVII of the Connecticut constitution which declares "The general assembly shall by law prescribe the offenses on conviction of which the right to be an elector and the privileges of an elector shall be forfeited and the conditions on which and methods by which such rights may be restored." Section 9-46a provides for restoration of electoral privileges upon submission of written or other satisfactory proof that all fines imposed upon the felony conviction have been paid and that the convicted person has been discharged from confinement, parole or probation. *Page 97 
The court is troubled by the total failure of § 9-46
to provide any procedural safeguards in the nature of notice and a right to a hearing before the loss of such valuable rights as electoral privileges may be effected. The privilege of voting is one of the essentials of a democratic society and a right not to be regarded lightly. Universal enfranchisement was realized only after centuries of denial and conflict. Its potential loss, even for those convicted of serious crimes, should be surrounded by at least the fundamentals of due process.
"The concept of due process, when the government seeks to deprive a person of life, liberty or property, is that the thoroughness of the procedure by which the deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake, and due process requires that the procedure involved must be appropriate to the nature of the case." Hart Twin Volvo Corporation v. Commissionerof Motor Vehicles, 165 Conn. 42, 45.
The constitutional guarantees of due process are invoked daily in a multitude of instances, e.g., to ensure fair trials for persons accused of crimes, to protect against arbitrary and capricious denial or withdrawal of rights preserved under licenses and to prevent the unmonitored seizure of property by creditors.
The barest essentials of due process require notice and an opportunity to be heard in a meaningful manner appropriate to the nature of the case.Boddie v. Connecticut, 401 U.S. 371, 378. If the right to a driver's license cannot be taken away without prior notice and a hearing; Bell v. Burson,402 U.S. 535; can it be maintained that the right to vote, the possession of electoral privileges, is less significant, less deserving of protection? While a statute forfeiting electoral rights of convicted felons *Page 98 
may be constitutionally authorized, it does not follow that the legislature is free of all constitutional restraints on how that forfeiture may be accomplished. Minimum standards of due process demand notice and an opportunity to be heard before the right to vote may be taken away. Section 9-46 fails to measure up to those minimum standards.
The statutory scheme indicates a legislative intent to disqualify from electoral privileges only for so long as a judgment of conviction has not been fully satisfied. Rights may be restored upon payment of any fine imposed or upon completion of any term of imprisonment, parole or probation. The plaintiff admittedly has paid his fine in full and furnished proof of that. He has done all that would be necessary to obtain restoration of his voting rights. The defendants claim the right to disenfranchise even though momentarily. Substantial consequences to the plaintiff would result from this action, however. The loss of his electoral privileges will mean the loss of his position as a member of the board of finance. The law does not insist upon the doing of a useless act. To permit this momentary disenfranchisement would seem to the court merely to be elevating hollow ceremony over substance.
The statute in question is clearly penal in nature. It must be strictly construed. Dental Commission
v. Tru-Fit Plastics, Inc., 159 Conn. 362, 365.
 On balance, the court concludes that the substantial and irreparable harm that would be done the plaintiff by the loss of his electoral rights outweighs the value of vindication of the policy of the statute.
A permanent injunction may enter enjoining the defendants Burns and Clough from removing the name of the plaintiff from the voting list of the