[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff presented evidence to establish probable cause that he would prevail in a trial of this action for the purpose of securing an attachment against the real estate of the defendant, The Allied Grocers Co-Operative, Inc. (Allied). In this action the plaintiff alleges wrongful discharge (First Count), negligent misrepresentation (Third Count), conspiracy to tortiously interfere with the plaintiff's business relations and/or to wrongfully discharge the plaintiff from his employment. (Sixth Count) and intentional infliction of emotional distress (Eighth Count).
The court finds that in 1989 the plaintiff was Director of Warehouse Operations for Allied. In early 1989 Calvin Miller ("Miller") became the President of Allied. Miller attempted to change the manner in which the plaintiff operated the warehouse.
He repeatedly attempted to change the plaintiff's practice of doing "productive" work in the warehouse. Productive work referred to doing tasks such as unloading food shipments and stamping cigarettes with tax stamps. Miller did not want the plaintiff to engage in productive work because it interfered with his ability to supervise the warehouse and it caused friction between Allied and its union employees. The union employees objected to and filed grievances concerning the plaintiff's engaging in productive work because that practice deprived union members of overtime and/or regular wages. Miller issued verbal and written reprimands to the plaintiff because he continued to do productive work. The plaintiff admitted that after 20 years of doing things in a certain way at Allied, he had difficulty conforming his conduct to Miller's wishes.
The plaintiff and the union's business representative, Roger Racine ("Racine") had had a poor relationship for many years prior to 1989. For many years Racine continually made comments to the effect that Allied should fire the plaintiff.
Prior to August of 1989 Allied determined that it wanted certain union employees to change their shift hours. The union's collective bargaining agreement with Allied required that the union members affirmatively approve the change in the shift hours. At the meeting concerning the CT Page 621 required vote, which occurred in August, 1989, Racine advised the union members present that the union was in favor of approving the change in shift hours if three conditions were met: 1) Allied bring in new business within 90 days; 2) Allied make certain concessions on the Union Pension and 3) Allied terminate the plaintiff's employment.
Keith Todd, a union member present at the August, 1989 meeting testified that certain people laughed when Racine referred to Allied's termination of the plaintiff because Racine's desire to see the plaintiff fired was a long standing "joke" by Racine. Todd did not think it was probable that Allied would terminate the plaintiff's employment. He voted to approve the change in shift hours because he wanted Allied to bring in new business.
A majority of union members voted to approve the change in shift hours at the August meeting after hearing a presentation by Miller concerning Allied's plan to generate new business and the relationship of the shift time change to that plan.
Prior to the date of the termination of the plaintiff's employment, Allied had experienced problems with theft from the warehouse and drug usage on warehouse premises.
The plaintiff asked Miller to allow him to take off the Friday after Thanksgiving, 1989. Miller agreed to allow the plaintiff to have the day off provided the warehouse was left adequately supervised. The plaintiff assured Miller that the warehouse would be adequately supervised. The plaintiff's employment was terminated after Miller arrived at the warehouse the day after Thanksgiving and found that the warehouse was not adequately supervised. In light of the plaintiff's admitted previous failures to adhere to the work procedures Miller mandated, Miller considered the failure to provide sufficient supervisory coverage to be "the last straw", causing him to terminate the plaintiff's employment.
In its ruling on the defendant Allied's Motion for Summary Judgment, this court stated that if the plaintiff could prove that he was terminated to induce the union to violate an existing union contract, then he could establish a cause of action for wrongful discharge in violation of an important public policy, under Sheets v. Teddy's Frosted CT Page 622 Foods, Inc., 179 Conn. 471, 427 A.2d 385 (1980). Based on the facts described above, the court finds that Allied had just cause to terminate the plaintiff's employment, and that the plaintiff has failed to establish probable cause that the plaintiff's termination was done to induce the union to violate any union contract. No evidence was introduced that any union contract was violated. Allied's union employees voted to approve a shift time change because Allied promised to secure more business and to make pension concessions.
The court further finds that in early 1989 an Allied supervisor, Dan Presnell, complained to Miller that Racine continually made comments that he wanted to "get rid of" the plaintiff. In response to this comment, Miller turned to the plaintiff and said, "If that's the case, you'll have a job for life." The plaintiff claims that that statement of Miller's constituted a negligently made false representation of lifetime employment on which the plaintiff relied to his detriment.
The court finds that given the context in which the foregoing statement was made, it was not reasonable for the plaintiff to have relied upon it as constituting a promise of lifetime employment. The statement was made less than eleven months prior to the plaintiff's termination. The plaintiff introduced no evidence that that statement caused him to forego any other job opportunities, or that he changed his position in any other way in reliance on that statement. Therefore, the plaintiff has not established probable cause that he will prevail on the negligent misrepresentation count of the complaint.
The court further finds that the plaintiff did not present evidence sufficient to establish probable cause that he would prevail on the sixth or eighth counts of the complaint. The sixth count of the complaint alleges a cause of action for conspiracy to tortiously interfere with the plaintiff's business relations. In a civil action for conspiracy, a plaintiff must prove the following:
1) A combination between two or more persons;
 2) To do a criminal or unlawful act or lawful act by criminal or unlawful means;
CT Page 623
 3) An act by one or more of the conspirators pursuant to the scheme and in furtherance of the object;
 4) Which acts results in damages to the plaintiff.
Williams v. Maislen, 116 Conn. 433, 437 165 A. 455
(1933).
The court finds that the termination of the plaintiff's employment resulted from a dissatisfaction with the plaintiff's performance and not from any agreement with the union to terminate the plaintiff.
The court finds that there is no probable cause established to support the eighth count of the complaint for emotional distress because the defendant's conduct did not create an unreasonable risk of causing emotional distress to the plaintiff.
For the foregoing reasons the application for prejudgment remedy is denied.
By The Court, Aurigemma, J.